**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beverly T Rutt, | No. CV-14-02539-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Penny Pritzker, | |
| Defendant. | |

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Amended Motion for Sanctions. (Docs. 73, 92.) The motions are fully briefed and neither party requested oral argument. For the following reasons, Plaintiff's Amended Motion for Sanctions is denied and Defendant's Motion for Summary Judgment is granted.

## PLAINTIFF'S AMENDED MOTION FOR SANCTIONS

More than two months after the completion of briefing on Defendant's Motion for Summary Judgment, Plaintiff filed her Amended Motion for Sanctions, which relates to three requests for production that Plaintiff served on Defendants during the course of this litigation. Plaintiff contends that Defendant failed to properly respond to these requests and asks that the Court draw negative inferences regarding the contents of these documents as a sanction.

Specifically and in relevant part, Plaintiff requested:

1.  All the cover sheets (top page) of Enumerator Questionnaires (EQ), D-1(E), I, Plaintiff, personally worked on during my census work in 2010.

. . .

3.  Names of Enumerators under the supervision of Crew Leader Hall from April 1, 2010 through May 4, 2010 who had their fingerprints taken more than once.

. . .

9.  Please provide a transcript of the teleconference between administrative Judge Warmee, Kyle P. Symanowitz and Plaintiff on December 2, 2011; and including any correspondence, notes, memoranda, diaries, records, journals, written materials, web "blogs" or similar electronic filings, or records of any kind which were shared and/or complied that contain any reference to Plaintiff's employment with the U.S. Census.

(Doc. 95-1 at 6-7.)

Defendant responded and lodged objections to each of these requests.  As to Request Number 1, Defendant objected that the information was protected from disclosure under 13 U.S.C. §§ 8-9, 214, and was not relevant to any claims or defenses. (*Id.* at 9-10.)  As to Request Number 3, Defendant objected on the basis of relevance, and that the request would require disclosure of personal information of non-parties and was prohibited by the Privacy Act, 5 U.S.C. § 552a(b).  (*Id.* at 11.)  Finally, in response to Request Number 9, Defendant objected on the basis of relevance, explained that it did not have the transcript in its custody or control, and that it had no other responsive documents.  (*Id.* at 12-13.)

The Court conducted a telephonic discovery dispute conference on June 21, 2016, during which it directed Defendant to supplement its responses to Request Number 1 and, for documents that do not exist, to explain why they do not exist, when they were disposed of, and who Plaintiff can depose to confirm the information.  (Doc. 69.) Defendant thereafter served supplemental responses, which continued to assert the prior relevance and privacy objections, but also explained the whereabouts of the requested documents.  (Doc. 95-1 at 16-18.)  Specifically, for Request Number 1 Defendant

1   explained that the documents were scanned into a computer system and their images were

2   saved, but that the original documents were destroyed.  Defendant also explained that the

3   scanned images were transferred to the custody and control of the National Archives.

4   Finally, Defendant identified Edmond Jarrell, Census Program Manager, as a person

5   whom Plaintiff could depose about the whereabouts and handling of these documents.

6       Plaintiff, however, did not depose Jarrell, nor did she contact the Court with

7   complaints about Defendant's supplemental responses.  Instead, she waited until months

8   after the close of discovery and completion of dispositive motion briefing to file the

9   present motion for sanctions.

10      "There are two sources of authority under which a district court can sanction a

11  party who has despoiled evidence:  the inherent power of federal courts to levy sanctions

12  in response to abusive litigation practices, and the availability of sanctions under Rule 37

13  against a party who fails to obey an order to provide or permit discovery.  *Leon v. IDX*

14  *Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotations and citations omitted).

15  Plaintiff has not demonstrated that sanctions are appropriate under either source of

16  authority.

17      Sanctions under Fed. R. Civ. P. Rule 37(b) are not appropriate because Defendant

18  complied with the Court's order to supplement its responses to Plaintiff's document

19  production requests.  If Plaintiff believed those responses were deficient, the Court's

20  scheduling order required her first to meet and confer with Defendant to resolve the issue.

21  If the parties reached an impasse, Plaintiff was required to contact the Court to arrange a

22  telephonic conference to discuss the issue.  She did not do so.

23      Nor are sanctions warranted under the Court's inherent powers.  "The bare fact

24  that evidence has been altered or destroyed does not necessarily mean that the party has

25  engaged in sanction-worthy spoliation."  *Reinsdorf v. Sketchers USA, Inc.*, 296 F.R.D.

26  604, 626 (C.D. Cal. 2013) (internal quotations and citation omitted).  Rather,

27          A party seeking an adverse inference instruction (or other
            sanctions) based on the spoliation of evidence must establish
28          the following three elements:  (1) that the party having
            control over the evidence had an obligation to preserve it at

the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).  Plaintiff has not made this showing.

First, there is no indication that Defendant destroyed documents responsive to Request Numbers 3 and 9.  Second, as to the original copies of the documents subject to Request Number 1, Plaintiff has not shown that Defendant was under a duty to preserve the originals at the time they were destroyed.  Finally, Plaintiff has not shown that Defendant acted with a culpable state of mind when it destroyed the original copies after scanning them into a computer system and transferring the images to the National Archives.  For these reasons, Plaintiff's Amended Motion for Sanctions is denied.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Background

Every decade, the Census Bureau (Bureau)—a subunit of the Department of Commerce (Department)—conducts a census that enumerates every person living in the United States.  In preparation for the 2010 census, the Bureau recruited several million people to fill temporary positions.  Among these were "enumerators" responsible for locating and listing households, interviewing respondents, recording data collected during interviews, and canvassing assigned areas.

Enumeration work is irregular by nature.  Enumerators typically try to work when people are home—such as mornings, evenings, and on weekends—and each day's work tends to be different depending on responses to earlier visit attempts.  Although not prohibited, enumerators typically do not work an eight hour or longer day because of the unpredictable nature of the work.  Enumerators are prohibited, however, from working more than forty hours per week without supervisory approval, and are subject to termination unless the unauthorized overtime was caused by unavoidable circumstances.

The Department hired Plaintiff, an elderly woman in her seventies, as a temporary

enumerator for the Phoenix area in April 2010.  Plaintiff worked for two weeks, during which time she recorded forty hours of work for each week.  Plaintiff reported that she worked three 10-hour days, two 9-hour days, one 8.5-hour day, one 8-hour day, one 6.25-hour day, one 6 hour day, one 2-hour day, and one 1.25-hour day.  Of these hours, only 1.25 hours occurred on the weekend.  Plaintiff also reported that on seven days she began work as early as 7:30 am.  Nancy Hall—Plaintiff's immediate supervisor—reviewed Plaintiff's timesheets and found the entries to be abnormal.  After meeting with her supervisor, Mike Silvius, to discuss the irregularities, Hall terminated Plaintiff on May 14, 2010.

On September 24, 2010, Plaintiff filed a discrimination complaint with the Department's Equal Employment Opportunity (EEO) office, alleging that Hall discriminated against her because of her sex, age, and disability.  On April 29, 2012, the EEO granted summary judgment in favor of the Department, finding that Plaintiff failed to establish a *prima facie* case of discrimination and did not show that Hall's legitimate, nondiscriminatory reasons for terminating Plaintiff were pretexual.

After exhausting her administrative appeals, Plaintiff filed this action in November 2014, alleging breach of contract, employment discrimination on the basis her age gender, and disability, and retaliation based on past EEO activity.  Defendant has moved for summary judgment on all counts.

**II.  Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Furthermore, the party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

**III. Discussion**

In her response memorandum, Plaintiff concedes her breach of contract and disability discrimination claims. (Doc. 83 at 2.) Accordingly, this order focuses on Plaintiff's remaining claims alleging discrimination on the basis of age and gender, and retaliation for past EEO activity.

**A. Discrimination**

Plaintiff contends that the Department terminated her because of her age and gender. Her claims arise under Title VII and the Age Discrimination in Employment Act (ADEA), which together prohibit discrimination in employment based on race, color, religion, sex, national origin, and age, and are governed by the burden-shifting

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See* 42 U.S.C. § 2000e-16; 29 U.S.C. § 621; *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000).

A plaintiff first must establish a *prima facie* case of discrimination by showing that she:  (1) is a member of a protected class, (2) qualified for her job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside her protected class.  *McDonnell Douglas*, 411 U.S. at 802. "The requisite degree of proof necessary to establish a prima facie case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123-24.  If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by," the employer.  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

For purposes of this order, the Court assumes that Plaintiff will be able to make a *prima facie* showing of discrimination at trial.  Plaintiff, however, "cannot defeat summary judgment simply by making out a *prima facie* case," *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991), and she has not proffered specific and substantial evidence to overcome Defendant's legitimate, nondiscriminatory reasons for terminating her.

Defendant asserts that it terminated Plaintiff because her time and attendance

claims were suspicious and her productivity was low, both relative to the number of hours Plaintiff reported working and compared to the number of cases completed by her peers.  Specifically, Hall found that (1) given the irregular nature of enumeration work, Plaintiff reported working an unusually large number of consecutive 8-10 hour days during the work week compared to other enumerators, (2) Plaintiff reported hours almost exclusively from Monday through Friday, leaving her unavailable to work on the weekends when respondents were most likely to be home and available to complete census questionnaires, (3) most of Plaintiff's peers were reporting less than 40 hours during the work week, (4) Plaintiff reported working as early as 7:30 am even though Department policy discouraged enumerators from contacting residents before 9:00 am, and (5) the number of cases Plaintiff completed was low, both relative to the number of hours.  In sum, Hall and Silvius decided to terminate Plaintiff because they determined that she worked an excessive number of hours during times when respondents were less likely to be home and, therefore, completed relatively fewer cases that her colleagues, none of whom reported a similar work pattern.

Having offered a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts to Plaintiff to demonstrate through specific and substantial evidence that Defendant's proffered reason is a pretext for discrimination.  "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action."  *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation and citation omitted).  Plaintiff "cannot simply show that the employer's decision was wrong, mistaken, or unwise."  *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted).  Instead, she must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Id.*  Plaintiff has not made this showing.

Plaintiff contends that her productivity was low because the houses in her assigned

areas were further apart than those in the areas assigned to her younger and male counterparts, but cites no admissible evidence to substantiate these claims.  (Doc. 84, ¶ 49.)   She also argues that a younger male colleague, Tanner Lipson, did not work weekends and that a younger female colleague, Deborah Bond, had similarly low production, but neither were terminated.  (*Id.*)   Plaintiff fails, however, to cite evidence that either of these employees reported similarly unusual work patterns.  Rather, the undisputed evidence shows that neither Lipson nor Bond reported multiple or consecutive 8-10 hour days, nor did they work excessively during the work week.  Further, there is no evidence that either of these employees reported working before 9:00 am.

Moreover, Plaintiff cannot show pretext merely by disagreeing with the correctness or her employer's judgment.  Neither Title VII nor the ADEA "require the employer to have good cause for its decisions.  The employer may fire an employee for a good reason, a bad reason, or a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Commc'n*, 738 F.3d 1181, 1187 (11th Cir. 1984).  Further, "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact."  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Stated otherwise, Plaintiff cannot defeat summary judgment by offering her own subjective belief that her supervisors' conclusions about her work patterns and productivity were wrong.  Defendant therefore is entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for its actions, and Plaintiff has proffered no admissible evidence that Hall and Silvius did not reasonably believe that her work patterns and productivity did not meet expectations.

### B.  Retaliation

Plaintiff alleges that she was terminated in retaliation for her prior EEO activity, which occurred in 1984 when she worked for the United States Postal Service.  This claim arises under Title VII, which prohibits employers from taking adverse action against employees who engage in certain protected activities, such as reporting claims of

discrimination, 42 U.S.C. 2000e-3, and also is governed by the *McDonnell Douglas* burden-shifting framework.  *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005).  To succeed, Plaintiff first must establish a *prima facie* case of retaliation by showing that "(1) she had engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." *Id.*  Plaintiff cannot make this showing.

Although Plaintiff's 1984 EEO activity is protected by Title VII and her termination qualifies as an adverse employment action, Plaintiff produces no evidence establishing a causal link between her 1984 EEO activity and her termination in 2010.  First, there is no evidence that Hall and Silvius were aware of her prior EEO activity.  Second, Plaintiff's prior EEO activity occurred over twenty-five years before her termination from the Bureau and, therefore, is too remote to establish a causal nexus circumstantially.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." (internal quotations and citation omitted)); *Mannatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (affirming summary judgment where nine months elapsed between the employee's protected activity and the alleged adverse employment action).  Defendant therefore is entitled to summary judgment.[1]

**IT IS ORDERED** that:

1. Plaintiff's Amended Motion for Sanctions (Doc. 92) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 73) is **GRANTED**.

//

---

[1] Further, even if Plaintiff could make a *prima facie* showing of retaliation at trial, for reasons previously discussed, Defendant has offered a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has proffered no admissible evidence, let alone specific and substantial evidence, suggesting that Defendant's reason is a pretext for discrimination.

3.    The Clerk shall enter judgment for Defendant and against Plaintiff on all claims, terminate all remaining motions, and close this case.

Dated this 17th day of February, 2017.


Douglas L. Rayes
United States District Judge